UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:                                    Chapter 11

FTTE, LLC,                                Case No. 9:18-bk-00841-FMD

      Debtor.

_____/

**DEBTOR'S AMENDED PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

Fort Myers, Florida                       ***/s/ Richard Johnston, Jr.***
March 8, 2019                             Richard Johnston, Jr.
                                          Florida Bar No. 0340995
                                          Johnston Law PLLC
                                          7370 College Parkway, Suite 207
                                          Fort Myers, Florida 33907
                                          Telephone: 239-600-6200
                                          Facsimile:  877-727-4513
                                          richard@richardjohnstonlaw.com
                                          Attorney for Debtor

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS AMENDED PLAN OF REORGANIZATION (THE "PLAN") SHOULD NOT BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DEBTOR'S AMENDED DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, FORT MYERS DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR ENTITLED TO VOTE ON THE PLAN.  THE DEBTOR RESERVES THE RIGHT TO FILE A SECOND AMENDED OR AN AMENDED AND RESTATED PLAN OR AN AMENDED OR AN AMENDED AND RESTATED DISCLOSURE STATEMENT (OR ANY COMBINATION OF THE FOREGOING) FROM TIME TO TIME HEREAFTER.  REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTOR'S HISTORY, BUSINESS, PROPERTY, AND OPERATIONS, THE PROJECTIONS FOR THE DEBTOR'S FUTURE OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE REORGANIZATION CASE, A SUMMARY OF THE MEANS OF IMPLEMENTING AND FUNDING THE PLAN, AND THE PROCEDURES FOR VOTING ON THE PLAN.  ALL HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## DEBTOR'S AMENDED PLAN OF REORGANIZATION
### Introduction

FTTE, LLC, as Debtor and Debtor in Possession in the Bankruptcy Case, hereby proposes the following Plan for the reorganization of the Debtor and the resolution of the outstanding Claims against, and Equity Interests in, the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.  In summary, but subject to more specific details provided herein, the Plan provides for the reorganization of the Debtor by the payment in full of third party general unsecured claims and the payoff of certain Allowed insider secured and unsecured Claims by means of partial cash payments and issuance of securities in the Reorganized Debtor in full satisfaction of those Claims. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 1 of the Plan.  The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or an Equity Interest until such time as the Debtor's Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests.  The Debtor's Disclosure Statement will be approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and will be distributed simultaneously with the Plan to all Holders of Claims and Equity Interests whose votes are being solicited.  The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, properties, and operations, (b) the Projections for the Debtor's future operations, (c) a summary of significant events which have occurred to date in the Reorganization Case, (d) a summary of the means of implementing and funding the Plan, and (e) the procedures for voting on the Plan.  Unless otherwise ordered by the Bankruptcy Court, no materials, other than the Plan and the accompanying Disclosure Statement, Disclosure Statement Approval Order, and Ballot, have been, or will be, approved by the Debtor or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.  ALL HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article 12.2 of the Plan, the Debtor expressly reserves the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN HAS BEEN APPROVED BY THE MANAGEROF THE DEBTOR.  IN THE DEBTOR'S OPINION, THE TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR.  ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND HOLDERS OF EQUITY INTERESTS, AND THE DEBTOR RECOMMENDS THAT CREDITORS AND HOLDERS OF EQUITY INTERESTS VOTE TO ACCEPT THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, THE PROJECTIONS FOR THE FUTURE OPERATIONS OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING OR SELLING OR TRANSFERRING SECURITIES OF THE DEBTOR SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## ARTICLE 1
## DEFINITIONS AND CONSTRUCTION

1.1     **Defined Terms**

    1.1.1   As used in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below, unless the context shows otherwise:

**Accrued Professional Compensation** means, at any given moment, all accrued, contingent or unpaid fees or any combination thereof (including success fees) for legal, financial advisory, accounting and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date that are awardable and allowable under the Bankruptcy Code Sections 328, 330(a) or 331 by any retained Professional in the Chapter 11 Case., or that are awardable and allowable under Section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by Final Order, all (a) to the extent that any such fees and expenses have not been previously paid and (b) after applying any retainer provided to such Professional and not yet applied. To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduces or denied amounts shall no longer constitute Accrued Professional Compensation.

**Administrative Expense** means (a) any cost or expense of administration of the Bankruptcy Case under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case on or before the applicable Administrative Expense Claim Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in

Possession in the ordinary course of its business, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) any Superpriority Claim; (c) all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Bankruptcy Case that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Cure Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 4.  In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period).

**Administrative Expense Claim** shall mean a Claim for payment of an Administrative Expense.

**Administrative Expense Claim Bar Date** means the date(s) established by one or more orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim, including as established in the Disclosure Statement Approval Order; provided, however, that (a) unless otherwise ordered by the Bankruptcy Court, the Administrative Expense Claim Bar Date for the filing by any Professional of an application for any Administrative Expense Claim not yet filed as of the date of the Plan shall be no later than fourteen (14) days after the date of entry of the Disclosure Statement Approval Order, and (b) to the extent the Bankruptcy Court has entered an order establishing a different and specific deadline for a Creditor or other party in interest to file an Administrative Expense Claim, the date set forth in such order shall be deemed to be the Administrative Expense Claim Bar Date as to such Creditor or other party in interest.  Any Holder of an Administrative Expense Claim (including a Holder of a Claim for Postpetition federal, state or local taxes) that does not file an application, motion, request or other Bankruptcy Court-approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtor, the Reorganized Debtor, its Property, or the Estate, and such Holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Expense Claim.

**Affiliate** means, with respect to any Person (other than the Debtor), (a) any other Person which, directly or indirectly, is in control of, is controlled by, or is under common control with such Person, (b) any other Person that, directly or indirectly, owns or controls, whether beneficially, or as trustee, guardian or other fiduciary, twenty-five percent (25%) or more of the equity interests having ordinary voting power in the election of directors of such Person, or (c) any other Person who is a director, officer, joint venturer or partner (i) of such Person, (ii) of any subsidiary of such Person, or (iii) of any Person described in clause (a) above. For the purposes of

this definition, control of a Person shall mean the power (direct or indirect) to direct or cause the direction of the management and policies of such Person whether by contract or otherwise. When used in the Plan as relating to the Debtor, the term "Affiliate" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**Allowed Amount** means the dollar amount in which a Claim is allowed.

**Allowed Administrative Claim** shall mean an Administrative Claim that becomes an Allowed Claim.

**Allowed Claim** shall mean a Claim, or that portion of a Claim, that is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date or Governmental Unit Bar Date, as applicable, or, by order of the Bankruptcy Court, was not required to be so filed, or an Administrative Expense Claim was filed on or before the Administrative Expense Bar Date, or by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office before the Bar Date or Governmental Unit Bar Date, as applicable, but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and, in the case of subparagraphs (a) and (b) above, as to which either (i) no objection to the allowance thereof has been interposed within the time allowed for making objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court or (ii) any objection as to the allowance of such Claim has been settled or withdrawn or has been overruled by a Final Order of the Bankruptcy Court (but only to the extent so allowed). "Allowed Claim" shall also include a claim that is allowed by the Bankruptcy Court (a) in any contract, instrument or other agreement or document entered into in connection with the Plan; (b) in a Final Order; or (c) pursuant to the terms of the Plan. Unless otherwise specified in the Disclosure Statement, the Plan or in the Final order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest, penalties, attorney's fees or other similar charges on the amount of such Claim from and after the Filing Date. Secured Creditors with collateral valued in excess of their Secured Claim shall be entitled to recover reasonable fees and costs as provided in their Pre-Petition loan documents and §506 of the Bankruptcy Code. The Plan does not provide for payment of interest at a rate exceeding the contractual rate and does not provide for the payment of default rate interest. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

**Allowed Class Claim** means an Allowed Claim in the particular Class described.

**Allowed Equity Interest** means any Equity Interest, or a portion thereof, (a) as to which proper proof of ownership has been furnished to the Debtor by the Holder thereof in accordance with applicable law and (b) which either (i) is not a Disputed Equity Interest or (ii) has been allowed by Final Order of the Bankruptcy Court.

**Assumed Contract** means a Pre-Petition executory contract or unexpired real or personal property lease which is (or are) are assumed by the Debtor pursuant to §365 of the Bankruptcy Code or pursuant to the terms of this Plan.

**Avoidance Actions** means any and all actions to avoid or recover a transfer of Property of the Debtor's Estate or an interest of the Debtor in Property, which a trustee, debtor in possession or other appropriate party in interest may assert on behalf of the Debtor's Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Section 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, regardless of whether or not such action has been commenced prior to the Effective Date.

**Ballot** shall mean the ballot or ballots accompanying the Disclosure Statement and the Plan, upon which Holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

**Bankruptcy Case** means the case of the Debtor currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which case was commenced by the Debtor on the Petition Date and presently bears Case No. 9:18-bk-00841-FMD.

**Bankruptcy Code** shall mean Title 11 of the United States Code (11 U.S.C. §101 *et seq.)* as in effect on the Petition Date together with all amendments and modifications thereto that were or are subsequently made applicable to this Bankruptcy Case.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Fort Myers Division, including the United States Bankruptcy Judge presiding over the Debtor's Chapter 11 case, and to the extent it is necessary and appropriate, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

**Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules in effect on the Petition Date together with all amendments and modifications that were or are made applicable to the Reorganization Case.

**Bar Date** means the bar date(s) established by the Bankruptcy Court from time to time, as the last day for filing a Proof of Claim against the Debtor in the Bankruptcy Case, excluding (a) a Prepetition Claim of a Governmental Unit, for which a Proof of Claim must be filed with the Bankruptcy Court by the Governmental Unit Bar Date, (b) an Administrative Expense Claim, for which a request for payment of an Administrative Expense must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, (c) a Claim for which a bar date may have been otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (d) a Claim with respect to an executory contract or unexpired lease that is assumed or rejected pursuant to the Plan (as to which the bar date shall be as set forth in Article 6, of the Plan) or a Final Order of the Bankruptcy Court (as to which the bar date shall be as set forth in such Final Order).

**Business Day** means any day other than a Saturday, Sunday or "legal holiday" as that term is defined in in Bankruptcy Rule 9006(a)), or (d) a day on which commercial banks in Fort Myers, Florida are required or authorized to close by law.

**Cash** means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a Distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Reorganized Debtor drawn on a domestic bank.

**Causes of Action** means any and all of the Debtor's or the Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, against any Creditor or other third party, including (a) the Avoidance Actions, and (b) any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, turnover actions and claims of the type referred to in the Disclosure Statement or in the Plan. The Causes of Action shall vest in the Reorganized Debtor on the Effective Date. When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by the Debtor pursuant to a Final Order of the Bankruptcy Court.

**Causes of Action Recoveries** means the proceeds, benefits and other recoveries of any Causes of Action received by the Reorganized Debtor.

**Claim** has the same meaning ascribed to that term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, the term "Claim" shall be given the broadest possible meaning permitted by the Bankruptcy Code or applicable law and shall include all manner and types of claims, whenever and wherever such claim may arise, including Administrative Expense Claims, Environmental Claims, and claims based upon or arising under any federal or state securities laws.

**Class** means a category of Claims or Equity Interests classified together as described in Article 3 of the Plan.

**Clerk** shall mean the Clerk of the Bankruptcy Court.

**Clerk's Office** shall mean the office of the Clerk located at 801 North Florida Avenue, Tampa, Florida 33602.

**Collateral** means Property in which the Estate has (or had) an interest and that secures (or secured), in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

**Confirmation or Confirmation of the Plan** means the approval of the Plan by the Bankruptcy Court at or after the Confirmation Hearing.

**Confirmation Date** shall mean the date on which the Confirmation Order is entered into the docket by the Bankruptcy Court pursuant to Bankruptcy Rules 5003(a) and 9021.

**Confirmation Hearing** means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time. The date of the Confirmation Hearing is set forth in the Disclosure Statement Approval Order.

**Confirmation Order** means the Final Order of the Bankruptcy Court in this Reorganization Case confirming the Plan pursuant to §1129 and other applicable provisions of the Bankruptcy Code, as such order may be amended, modified or supplemented.

**Conservator** shall mean Philip von Kahle in his capacity as the court appointed conservator of the Probate Estate.

**Creditor** means the Holder of a Claim, within the meaning of §110(10) of the Bankruptcy Code, including, but not limited to, Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Claims, Priority Tax Claims, Secured Claims and Unsecured Claims.

**Cure Claim** means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtor pursuant to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non-monetary), arising from, relating to or in connection with the assumption by the Debtor of any Assumed Contract (provided such Claim is filed with the Bankruptcy Court by the Cure Claim Submission Deadline). In no event shall any Claim set out in a Proof of Claim be deemed to be a Cure Claim.

**Cure Claim Submission Deadline** means, and shall occur on the same day as, the Voting Deadline.

**Day(s)** means, unless expressly otherwise provided, calendar day(s).

**Debt** has the same meaning as that ascribed in §101(12) of the Bankruptcy Code.

**Debtor** shall mean FTTE, LLC

**Debtor in Possession** means FTTE, LLC, as Debtor in Possession in this Bankruptcy Case.

**Disallowed Claim** means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

**Disallowed Interest** means an Interest, or any portion thereof, that is disallowed.

**Disclosure Statement** means the Debtor's Amended Disclosure Statement dated March 8, 2019, filed in the Bankruptcy Case by FTTE, LLC's pursuant to Section 1125 of the Bankruptcy Code, including all exhibits, appendices and schedules attached thereto, as submitted by the Debtor to accompany this Plan, as such Disclosure Statement may be altered, amended, restated or modified from time to time.

**Disclosure Statement Approval Order** means the Order Approving Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of Plan, and Setting Deadlines with Respect to Confirmation Hearing, entered in the Bankruptcy Case. Such order also includes an order which conditionally approves the Disclosure Statement.

**Disputed Claim** means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Bankruptcy Court or is deemed filed under applicable law or order of the Bankruptcy Court and (b) an objection has been or may be timely filed by the Debtor or any other party in interest and which objection has not been (i) withdrawn, (ii) overruled or denied by a Final Order or (iii) sustained or granted by a Final Order. In addition to the foregoing, a Disputed Claim shall mean a Claim that has not been Allowed by Final Order, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of the Claim listed by the Debtor in its schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim listed in the Schedules, (c) any corresponding Claim has been listed in the Schedules as disputed, contingent or unliquidated (d) the Claim was not listed by the Debtor in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to an allowance of only part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection. "Disputed," when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim), has a corresponding meaning.

**Disputed Equity Interest** means any Equity Interest as to which an objection has been or may timely be filed or deemed filed under applicable law and any such objection has not been (a) withdrawn, (b) overruled, or denied by Final Order, or (c) sustained or granted by a Final Order.

**Distribution** means a payment or transfer of property pursuant to this Plan by the Debtor or the Reorganized Debtor to the Holder of an Allowed Claim or Allowed Interest as a payment or partial payment of that Claim or Interest pursuant to the terms of the Plan.

**Distribution Date** means, when used with respect to an Allowed Claim (other than an Allowed Secured Claim), the date which is as soon as reasonable practicable after the later of (a) the Effective Date or (b) the first Business day occurring ten (10) days after the date the order allowing such Claim becomes a Final Order.

**District Court** means the United States District Court for the Middle District of Florida, Fort Myers Division, or the unit thereof having jurisdiction over the matter in question.

**Docket** means the docket or dockets in the Bankruptcy Case maintained by the Clerk.

**Effective Date** means, and shall occur on, the first Business Day on which all of the conditions to the occurrence of the Effective Date contained in Article 10.2 of the Plan have been satisfied or waived as provided in Article 10.2 of the Plan, unless extended by the Debtor.

**Effective Date Notice** has the meaning ascribed to such term in Article 10.3 of the Plan.

**Entity** has the meaning ascribed to that term in §101(15) of the Bankruptcy Code.

**Equity Interests** means member or shareholder interests held by all Holders of issued or outstanding membership interests or shares of stock (as defined in applicable law) in the Debtor.

**Estate** means the estate created for the Debtor pursuant to §541 of the Bankruptcy Code upon commencement of this Bankruptcy Case.

**Estimation Hearing** means the hearing for the estimation of Claims under §502(c) of the Bankruptcy Code.

**Exculpated Parties** has the meaning ascribed to such term in Article 9.2 of the Plan.

**Final Decree** means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to Section 350(a) of the Bankruptcy Code and Rule 3022, Federal Rules of Bankruptcy Procedure.

**Final Decree Date** means the date on which the Final Decree, obtained after a hearing on notice to the Notice Parties and to such other Persons and Entities as the Bankruptcy Court may direct, is entered on the docket for the Bankruptcy Case.

**Final Order** means (a) an order, judgment, ruling, or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with this Bankruptcy Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and determined, dismissed or otherwise resolved and the time for further appeal or petition or motion for review has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**Finance** shall mean FTTE Finance, LLC.

**Finance Action** shall mean the action filed in the State Court by Finance against the Debtor and Florida Tracks and Trails, Inc. for foreclosure of the security interests held by Finance against the Land Lease, the Land Sublease and the Debtor's assets that are collateral for the Finance loan. That action bore case number 16-000464-CA in the State Court. The Finance Action has been removed to the Bankruptcy Court and bears case number 18-ap-218.

**First CZ** shall mean First CZ Real Estate, LLC

**First CZ Action** shall mean that action filed by First CZ in the State Court against the Debtor to collect its unsecured Claim, or purported Claim, against the Debtor. That action bore case number 15-0002496-CA. The First CZ Action has been removed to the Bankruptcy Court and bears case number 18-ap-219.

**Government Authority** means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality, or administration of the United States, a foreign country, the State of Florida, or any state, provincial, territorial, municipal, local or other governmental Entity in the United States or a foreign country.

**Governmental Unit** has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

**Governmental Unit Bar Date** means August 1, 2018, the date set by Section 502(b)(9) of the Bankruptcy Code as the last day for a Governmental Unit to file a Proof of Claim against the Debtor in the Bankruptcy Case.

**Holder** means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtor or the Reorganized Debtor, as the case may be, have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the register that is maintained by the Debtor or as otherwise determined by order of the Bankruptcy Court.

**Impaired** means, when used with reference to a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**Insider** shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

**Insider Claim** means any Claim of an Insider against the Debtor, other than any Claim of an Insider that is either a Prepetition Unsecured Debt Claim or a Claim for indemnification under the Debtor's organizational documents, employment agreement, internal policies or otherwise.

**Interest** means any and all equity interests, ownership interest, or shares in the Debtor, if any, issued by the Debtor prior to the Petition Date (including, without limitation, all capital stock, stock certificates, common stock, preferred stock, partnership interests, membership and other interests in a limited liability company, rights, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights and liquidation preferences, puts, calls or commitments of any character whatsoever relating to any such equity, ownership interests or

shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock) whether or not certificated, transferable, voting or denominated 'stock' or 'membership' or a similar security, and any Claim or Cause of Action relating to or arising from any of the foregoing.

**Land** shall mean and include that certain 996 acre parcel of real property on which the Debtor conducts its business along with any and all improvements thereon or thereto which land is located at 39450 Bermont Road, Punta Gorda, Florida 33982 which is the subject of the Land Lease. That term shall also include the Debtor's option to lease an additional 500 acres of adjoining real property to the extent that such option is exercised.

**Land Lease** means that certain written lease dated May 25, 2011, by and between Volney Cothern and Joseph Rex Goulding, Successor Co-Trustees of the M. Lewis Hall Protective Testamentary Trust for William Lewshane Hall, Beneficiary, and William Lewshane Hall and Florida Tracks & Trails, Inc. pursuant to which the Debtor's predecessor leased the Land.

**Land Sublease** means that certain written sublease dated May 29, 2013, pursuant to which Florida Tracks and Trails, Inc. assigned its interest as tenant under the Land Lease to the Debtor and which was recorded on July 1, 2013 in the Public Records of Charlotte County, Clerk of Court at Instrument 2192353, in OR Book 3780, Pages 930-980 (51 pages).

**Landlord** shall mean the Probate Estate or the Trust or both of them, as appropriate in context.

**Liabilities** means any and all liabilities, obligations, judgments, damages, charges, costs, Debts and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor, or any Affiliate, subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor, or any Affiliate, subsidiary, predecessor, successor or assign thereof, any Property of the Debtor, the businesses or operations of the Debtor, the Bankruptcy Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts and indebtedness, based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that when used in the Plan, the term "Liabilities" shall not include any obligations of the Reorganized Debtor expressly set forth in the Plan.

**Lien** means, with respect to any asset or Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

**Local Rules** means the Local Rules of the United States Bankruptcy Court for the Middle District of Florida and, to the extent applicable and not inconsistent with the foregoing and the Bankruptcy Rules, the Local Rules of the United States District Court for the Middle District of Florida.

**Local Rule Service List** means the "Local Rule 1007(d) Parties in Interest List" for the Bankruptcy Case, as that term is defined in Local Rule 1007-2(b).

**Operating Agreement** means that certain Amended Operating Agreement dated May 22, 2013, which was adopted by the Debtor pre-petition and was in effect on the Petition Date.

**Person** means any natural person, individual, corporation, association, partnership, limited liability company, joint venture, joint stock companies, trusts, land trusts, business trust, business organization, unincorporated organizations or associations, or other organizations , irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other Entity or institution of any type whatsoever, including any "person" as such term is defined in §101(41) of the Bankruptcy Code.

**Petition Date** means February 2, 2018, the date on which the Debtor filed its petition for relief commencing this Chapter 11 case.

**Plan** means this Plan of Reorganization proposed by the Debtor, and all exhibits or attachments to the Plan, as the same may be amended, supplemented, modified or restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

**Plan Documents** means all documents, attachments, and exhibits and any amendments to the foregoing made in accordance with the terms thereof or the Bankruptcy Code, as applicable, that aid in effectuating the Plan.

**Plan Proponent** means the Debtor.

**Post-Petition** means arising or accruing after the Petition Date and before the Effective Date.

**Pre-Petition** means arising or accruing on or prior to the Petition Date.

**Priority Claim** means any Claim that is entitled to priority pursuant to subparagraphs (3) through (7) of §507(a) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

**Priority Tax Claim** means a Claim of a governmental unit or Governmental Authority that is entitled to a priority pursuant to §507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

**Probate Estate** means the estate of William Lewshane Hall, deceased.

**Pro Rata Share** means, with respect to any Distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims being paid the pro rata distribution payment, all determined as of the applicable distribution date.

**Professional** means any professional employed in the Reorganization Case with the approval of the Bankruptcy Court pursuant to §§327 or 1103 of the Bankruptcy Code.

**Professional Fee Claim** means an Allowed Claim for compensation of reimbursement or expenses or both pursuant to Sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code relating to services incurred on or after the Petition Date and prior to and including the Effective Date in connection with an application by the Professional in the Chapter 11 Case made to, and approved by, the Bankruptcy Court.

**Proof of Claim** means any proof of claim filed with the Bankruptcy Court pursuant to Bankruptcy Rules 3001, 3002 or 3003.

**Property** means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

**Rejected Contract** means those executory contracts or unexpired leases which have been rejected by the Debtor during the Bankruptcy Case pursuant to an order of the Bankruptcy Court or which will be rejected pursuant to Article 6 of this Plan.

**Reorganized Debtor** means the Debtor on and after the Effective Date as reorganized pursuant to the Plan, including any successor thereto by merger, consolidation or otherwise.

**Schedules** collectively means the Statement of Financial Affairs and Schedules filed by the Debtor in this Bankruptcy Case pursuant to Bankruptcy Rule 1007, as such may heretofore or hereafter be amended, modified or supplemented from time to time.

**Secured Claim** means any Claim that is (a) secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under §553 of the Bankruptcy Code, but with respect to both (a) and (b) above, only to the extent of the Estate's interest in the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be. If the value of a Creditor's interest or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

**Secured Creditor** means any Creditor holding a Secured Claim.

**Security** has the meaning ascribed to such term in Section 101(49) of the Bankruptcy Code.

**State Court** shall mean the Circuit Court of the Twentieth Judicial Circuit in and for Charlotte County, Florida.

**Tax Lien Claims** means Claims against the Debtor for taxes owed by the Debtor which are secured under applicable law by a valid, perfected and unavoidable lien or other encumbrance on any of the Debtor's Property.

**Trust** means M. Lewis Hall Protective Testamentary Trust for William Lewshane Hall, Beneficiary.

**Unimpaired Claim** means a Claim that is not impaired within the meaning of §1124 of the Bankruptcy Code.

**United States** means the United States of America.

**United States Trustee** means the Office of the United States Trustee for the Middle District of Florida.

**Unsecured Claim** means any Claim other than an Administrative Expense Claim, Secured Claim, Priority Claim, Priority Tax Claim, or Tax Lien Claim, and unless otherwise provided herein, includes the deficiency portion of an undersecured Claim and any Claim arising from the rejection of an executory contract or unexpired lease under §365 of the Bankruptcy Code.

**Unsecured Claim** means any Claim not otherwise classified in the Plan, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan.

**Unsecured Creditor** means any creditor holding an Unsecured Claim.

**Voting Deadline** means the last day to vote to accept or reject the Plan as fixed by order of the Bankruptcy Court.

**Voting Instructions** means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and accompanying the ballots.

1.2        **Terms Defined in Bankruptcy Code and Bankruptcy Rules**

Any capitalized term used in the Plan that is not otherwise defined in the Plan, but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, shall have the meaning assigned to

them in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Any conflict or ambiguity shall be controlled by the meaning assigned to the given term in the Bankruptcy Code or Bankruptcy Rules. If there is conflict or ambiguity between the use of the Bankruptcy Code or Bankruptcy Rules, the Bankruptcy Code shall control.

1.3    **Rules of Construction and Interpretation**

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular term and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and condition; (c) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an exhibit is inconsistent with the terms of the exhibit, the terms of the exhibit shall control; (e) unless otherwise specified, all references in the Plan to articles or exhibits are references to articles and exhibits of or to the Plan; (f) unless the context requires otherwise, the words 'herein' 'hereunder' and 'hereto' refer to the Plan in its entirety rather than a particular Article, section or subsection of the Plan; (g) any phrase containing the term 'include' or 'including' shall mean including without limitation; (h) all of the exhibits referred to in the Plan shall be incorporated herein by such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; and (j) the rules of construction set forth in §102 of the Bankruptcy Code shall apply in the construction of the Plan to the extent such rules are not inconsistent with any other provision in this Article.

1.4    **Preserved Liens**

To the extent required under §1124(2) of the Bankruptcy Code to preserve the rights of a Secured Creditor treated under that section, the lien or encumbrance shall, to the extent that it is valid, be preserved. Otherwise, the transfers and conveyances contemplated by this Plan shall be free and clear of all liens, encumbrances, claims and interests. This does not apply to any Secured Creditor whose claim was stripped from any collateral pursuant to a motion to value collateral filed with the Bankruptcy Court and an order of the Bankruptcy Court determining the secured or unsecured status of any such claim and the extent, validity and priority of the lien against any collateral.

1.5    **Time for Filing Claims**

All creditors other than creditors having Administrative Claims or governmental units, including creditors having damages claims by reason of Section 1124(2)(c) of the Bankruptcy Code, were required to file proofs of claim with the Bankruptcy Court no later than June 4, 2018, pursuant to the Bankruptcy Court's notice of commencement dated February 6, 2018.

1.6 **Reference to Monetary Figures**

All references in the Plan to monetary figures shall refer to currency of the United States of America unless otherwise specified.

## ARTICLE 2
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## AND PRIORITY TAX CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this Article 2.

2.1 **Administrative Expense Claims.**

2.1.1 Except as otherwise provided in Articles 2.1.2 and 2.1.3 below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid (a) on the Distribution Date, an amount, in Cash, by the Reorganized Debtor equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor or the Reorganized Debtor, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

2.1.2 All unpaid fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date shall be paid to the United States Trustee by the Reorganized Debtor by no later than thirty (30) days following the Effective Date. Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6), with respect to the Bankruptcy Case shall be paid by the Reorganized Debtor, until the earlier of (i) the closing of the Bankruptcy Case by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting the Bankruptcy Case to another chapter under the Bankruptcy Code. Any such payment to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).

2.1.3 All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid by the Reorganized Debtor (a) in the ordinary course of business in accordance with contract terms, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor or the Reorganized Debtor, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

2.2        **Priority Tax Claims.**

Each Holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtor, on account of such Allowed Priority Tax Claim, regular installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor or the Reorganized Debtor, as the case may be.

**ARTICLE 3**
**DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS**

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. A Claim or Equity Interest (a) is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. For purposes of the Plan, the Claims and Equity Interests are classified as follows:

3.1    **Class 1:  Allowed Secured Claim of JP Morgan Chase.**

Class 1 consists of the Allowed Secured Claim of JP Morgan Chase.

3.2    **Class 2:  Allowed Secured Claim of Kubota Credit.**

Class 2 consists of the Allowed Secured Claim of Kubota Credit.

3.3    **Class 3: First Allowed Secured Claim of John Deere Financial.**

Class 3 consists of the first Allowed Secured Claim of John Deere Financial.

3.4    **Class 4: Second Allowed Secured Claim of John Deere Financial**

Class 4 consists of the second Allowed Secured Claim of John Deere Financial.

3.5    **Class 5: Allowed Secured Claims of the Charlotte County Tax Collector**

Class 5 consists of the Allowed Secured Claim of the Charlotte County Tax Collector.

3.6    **Class 6: Allowed Secured Claim of FTTE Finance, LLC.**

Class 6 consists of the Allowed Secured Claim of FTTE Finance, LLC.

3.7 **Class 7: Allowed Insider Unsecured Claim of First CZ, LLC.**

Class 7 consists of the Allowed Insider Unsecured Claim of First CZ, LLC.

3.8 **Class 8: Allowed Unsecured Cure Claim on the Land Lease and Land Sublease.**

Class 8 consists of the Allowed Unsecured Cure Claim on the Land Lease and Land Sublease.

3.9 **Class 9: Holders of Licenses for Park Use.**

Class 9 consists of the Holders of Licenses for Park Use.

3.10 **Class 10: Allowed Non-Insider General Unsecured Claims.**

Class 10 consists of the Allowed Non-Insider General Unsecured Claims.

3.11 **Class 11: Allowed Insider General Unsecured Claims (other than Class 7 Claim and Class 12 Claim)**

Class 11 consists of the Allowed Insider General Unsecured Claims other than those treated in Classes 7 and 12.

3.12 **Class 12: Insider General Unsecured Claim of Bjorn Rosinus**

Class 12 consists of the Insider General Unsecured Claim of Bjorn Rosinus.

3.13 **Class 13: Equity Security Interests.**

Class 13 consists of the Equity Interests in the Debtor as they existed on the Petition Date.

## ARTICLE 4
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall be treated under the Plan in the manner set forth in this Article 4. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Equity Interests.

4.0 **Unclassified Claims.**

Holders of Allowed Administrative Expense Claims and Allowed Priority Tax Claims shall receive the treatment set forth in Article 2 of the Plan. Those claims are unclassified.

4.1        **Class 1:  Allowed Secured Claim of JP Morgan Chase.**

     4.1.1    Class 1 consists of the Allowed Secured Claim of JP Morgan Chase in the approximate amount of $21,062.00 secured by a first lien security interest in a 2014 Ford F-350 pickup truck ("Truck").

     4.1.2    JP Morgan Chase shall retain its first lien security interest in the Truck until the Class 1 Claim is paid in full. The Debtor or Reorganized Debtor shall pay the regular monthly payments due under the non-default provisions of the credit agreement between the Debtor and JP Morgan Chase from the Debtor's operating revenues. Any arrearages in the subject credit agreement shall be cured within sixty days of the Effective Date by payment either from the operating revenues of the Debtor or Reorganized Debtor or from the Exit Financing.

     4.1.3    Class 1 is Unimpaired.

4.2        **Class 2:  Allowed Secured Claim of Kubota Credit.**

     4.2.1    Class 2 consists of the Allowed Secured Claim of Kubota Credit in the approximate amount of $6,016.72 secured by a first lien security interest in a 2014 Kubota Skid Steer ("Skid Steer").

     4.2.2    Kubota Credit shall retain its first lien security interest in the Skid Steer until the Class 2 Claim is paid in full. The Debtor or Reorganized Debtor shall pay the regular monthly payments due under the non-default provisions of the credit agreement between the Debtor and Kubota Credit from the Debtor's operating revenues. Any arrearages in the subject credit agreement shall be cured within sixty days of the Effective Date by payment either from the operating revenues of the Debtor or Reorganized Debtor or from the Exit Financing.

     4.2.3    Class 2 is Unimpaired.

4.3        **Class 3: First Allowed Secured Claim of John Deere Financial.**

     4.3.1    Class 3 consists of the Allowed Secured Claim of John Deere Financial in the approximate amount of $549.93 secured by a first lien security interest in a John Deere Lawn Mower ("Lawn Mower").

     4.3.2    John Deere Financial shall retain its first lien security interest in the Lawn Mower until the Class 3 Claim is paid in full. The Debtor or Reorganized Debtor shall pay the regular monthly payments due under the non-default provisions of the credit agreement between the Debtor and John Deere Finance from the Debtor's operating revenues. Any arrearages in the subject credit agreement shall be cured within sixty days of the Effective Date by payment either from the operating revenues of the Debtor or Reorganized Debtor or from the Exit Financing.

     4.3.3    Class 3 is Unimpaired.

4.4        **Class 4: Second Allowed Secured Claim of John Deere Financial.**

4.4.1    Class 4 consists of the second Allowed Secured Claim of John Deere Financial in the approximate amount of $4,695.37 secured by a first lien security interest in a John Deere Gator Utility Vehicle ("Gator").

4.4.2    John Deere Financial shall retain its first lien security interest in the Gator until the Class 4 Claim is paid in full. The Debtor or Reorganized Debtor shall pay the regular monthly payments due under the non-default provisions of the credit agreement between the Debtor and John Deere Finance from the Debtor's operating revenues. Any arrearages in the subject credit agreement shall be cured within sixty days of the Effective Date by payment either from the operating revenues of the Debtor or Reorganized Debtor or from the Exit Financing.

4.4.3    Class 4 is Unimpaired.

4.5        **Class 5: Allowed Secured Claims of the Charlotte County Tax Collector**

4.5.1    Class 5 consists of the Allowed Secured Claims of the Charlotte County Tax Collector ("Tax Collector") in the approximate amount of $5,399.00 for unpaid tangible personal property taxes and business license tax in the amount of $87.50.

4.5.2    The Class 5 claim was paid by the Debtor in the ordinary course of the Debtor's business. The Tax Collector has been paid in full and shall receive nothing under the Plan.

4.5.3    Class 5 is Unimpaired.

4.6        **Class 6: Allowed Secured Claim of FTTE Finance, LLC**

4.6.1    Class 6 consists of the Secured Claim of FTTE Finance, LLC ("Finance") which is in the scheduled amount of $2,000,000.00 and pursuant to Finance' proof of claim is in the amount of $2,643,576.00. The claim is secured by a first lien against the Land Lease and Land Sublease and all of the remaining personal property of the Debtor.

4.6.2    The Debtor disputes the amount of the Finance Claim in that the total amount actually loaned to the Debtor was no more than $1,600,000.00 not the $2,000,000.00 reflected on the note evidencing the loan underlying that Claim. Of those loan proceeds, only $800,000.00 actually went for the stated purposes under the loan documents which was to fund the completion of construction of improvements to the Land and for the Debtor's business operations at the Park. Nothing in this Plan should be construed as an estoppel by pleading with regard to the Debtor's defenses to the Finance Class 6 Claim. Furthermore, to the extent that any member of Finance has been paid or repaid any part of funds that member paid into Finance which funds were loaned to the Debtor, such payment or repayment from the collateral source would reduce Finance's Allowed Claim on a dollar for dollar basis in the amount of such payment or repayment. The Bankruptcy Court will ultimately determine the amount of the Allowed Claim due to Finance unless Finance accepts the terms of treatment under this Class.

4.6.3    The Debtor and Reorganized Debtor propose that Finance shall have an Allowed Secured Claim in the Amount of $800,000.00 less any payment made to any member of Finance from a third party or collateral source for or on account of that member's investment in Finance ("Allowed Net Finance Claim"). Finance shall retain its liens against the Debtor's property to the same extent, validity and priority for such Claim as existed on the Petition Date and subject to the subordination provisions under this Plan and only in the amount of the Allowed Net Finance Claim. However the Allowed Net Finance Claim may be subordinated to any lender who will fund the payments due under this Plan or the Exit Financing so long as the Allowed Net Finance Claim remains fully secured after any such subordination.

4.6.4    Finance shall dismiss the Finance Action without prejudice no later than the Effective Date. The Debtor or Reorganized Debtor shall satisfy the Allowed Net Finance Claim by paying Finance the Allowed Net Finance Claim upon the later of ninety days after the Effective Date; or upon the entry of a Final Order determining the amount of the Allowed Net Finance Claim; or at the closing of the Exit Financing (defined below), whichever later occurs.

4.6.5    In the event that the Debtor or Reorganized Debtor reach an agreement to borrow funds sufficient to fund the instant Plan ("Exit Financing"), Finance shall subordinate its security interest in the Debtor's property to the lender providing the Exit Financing unless the Exit Financing results in the full amount of the Allowed Net Finance Claim being paid in full at the closing of the Exit Financing. As a condition of such full payment of the Allowed Net Finance Claim, Finance shall execute and deliver to the closing agent for the Exit Financing a satisfaction of Finance's Claim releasing and satisfying Finance's Claim and the security interest associated with that Claim. In the event that the Exit Financing does not include full payment of the Allowed Net Finance Claim, the remaining balance of the Allowed Net Finance Claim after closing of the Exit Financing shall be secured by a second lien security interest in the Debtor's property behind the first lien security interest in the Debtor's property of the Exit Financing lender. Finance shall execute and deliver to the Debtor's or the Reorganized Debtor any documents necessary to effectuate the Exit Financing.

4.6.6    The Debtor or Reorganized Debtor shall have the right, but not the obligation, to repurchase the membership interests ("Shares") in the Debtor or Reorganized Debtor, owned by Andrey Tolkachev or Oleg Tolkachev, or both of them, in whole or in part, during the 36 month period following the Effective Date. In exercising this repurchase right, the price for the Shares shall be calculated at the rate of $500,000.00 per Share. The price for a fractional Share repurchase shall be determined by taking the fraction of a Share being purchased and multiplying that fraction by $500,000.00. By way of example, if .75 Shares were being repurchased, the price would be $375,000.00 (.75 x $500,000.00). The Debtor or Reorganized Debtor shall give Andrey Tolkachev or Oleg Tolkachev, notice of their intent to repurchase Shares and the closing date for that repurchase at least five days prior to the closing date. Payment shall be in the form of a cashier's check or by wire transfer on the closing date. Prior to the closing date for any repurchase, Andrey Tolkachev or Oleg Tolkachev, as appropriate in context shall execute any document required to effectuate the repurchase transaction.

4.6.7    Class 6 is Impaired.

4.7        **Class 7: Allowed Insider Unsecured Claim of First CZ, LLC.**

4.7.1    Class 7 consists of the Allowed Insider Unsecured Claim of First CZ, LLC, which is in the scheduled amount of $1,000,000.00 and pursuant to First CZ proof of claim is in the amount of $1,300,000.00 and is unsecured. The Class 7 Claim is supported by two promissory notes. The first note was dated December 15, 2014 in the principal amount of Five Hundred Thousand Dollars ("First Note") and was executed by the Debtor in favor of First CZ. The second note was dated December 15, 2014 in the principal amount of One Million Dollars ("Second Note") and was executed by the Debtor in favor of Zelezarny Stepanov s.r.o. ("Stepanov"). Stepanov assigned the Second Note to First CZ. Both First CZ and Stepanov were members of the Debtor at the time of the purported loans.

4.7.2    The First CZ claim should not be allowed as filed. First CZ and Stepanov received equity in the Debtor in lieu of the repayment of the loans represented by the First Note and Second Note with those member interests reflected both by the Debtor's books and records and by K-1s issued to First CZ and Stepanov for 2014 and beyond. The equity received by First CZ in consideration of the 'loan' was 1 Share valued at $500,000.00. The equity received by Stepanov in consideration of the 'loan' was 1 Share valued at $500,000.00. Moreover, upon information and belief, First CZ, Stepanov or their principals, or some combination of the foregoing, were paid $510,000 for the loans in or about 2015 out of the Finance loan transaction proceeds, which payment reduced the First CZ Claim dollar for dollar. Third, the First and Second Notes do not comport with the terms of the Debtor's operating agreement ("Operating Agreement") for Member loans. The Operating Agreement (Subparagraph 6) requires that interest on any member loans to the Debtor be limited to the rate of LIBOR plus 1% and repayment can only be due 'as soon as practicable.' In addition, any member loan must be approved by the Debtor's advisory board prior to incurring company indebtedness. The loans do not meet these requirements of the Operating Agreement. In addition, the signatures of Terry Cook on the First Note and the Second Note were unauthorized copies if his signatures, not original signatures. For the foregoing reason, First CZ's Claim should be treated as equity. Alternatively, the Debtor proposes that any purported Claim held by First CZ be subordinated to all of the Debtor's other Claims and interests except for the interests of the other Holders of shares in the Debtor and the First CZ Claim be satisfied by First CZ retaining its 1 Share in the Debtor or Reorganized Debtor and by Stepanov retaining its 1 Share in the Debtor or Reorganized Debtor pursuant to Section 510(b) of the Bankruptcy Code.

4.7.4    The First CZ Action shall be dismissed without prejudice upon the Effective Date. First CZ shall forbear from collecting any claims against the Debtor or Reorganized Debtor consistent with the terms of this Plan.

4.7.4    Class 7 is Impaired.

4.8    **Class 8: Allowed Unsecured Cure Claim on the Land Lease and Land Sublease.**

4.8.1    Class 8 consists of the Allowed Unsecured Cure Claim of the Trust or the Probate Estate which arises from the assumption of the Land Lease and Land Sublease by the Debtor. That claim is unsecured and is estimated to be $114,000 for real estate taxes due or due and payable on the Land under the Land Lease and Land Sublease (estimated at $96,000.00); alleged late fees for

the quarterly periods starting April 1, 2018 and July 1, 2018 (estimated at $5,000.00); and attorney's fees through July, 2018, estimated at $13,500.00). On January 23, 2019, the Bankruptcy Court heard the Conservator's Motion for Order Ruling on Motion to Assume Lease [Doc. 157] ("Assumption Motion"). The Court announced its ruling on the Assumption Motion (and will soon enter an order) which required the Debtor to pay the Conservator the following no later than April 1, 2019: (a) the remaining unreimbursed 2015 ad valorem real estate taxes in the amount of $8,480.81; the outstanding 2017 ad valorem real estate taxes in the amount of $38,581.18; the outstanding 2018 ad valorem real estate taxes in the  amount of $32,772.83; and the Conservator's attorney's fees incurred through July 31, 2018, in the amount of $13,013.91. The Allowed Unsecured Cure Claim would be reduced by the amounts actually paid by the Debtor pursuant to the Bankruptcy Court's ruling on the Assumption Motion. The full Allowed Unsecured Cure Claim minus any payments made pursuant to the Bankruptcy Court's ruling on the Assumption Motion is the Net Cure Claim. The Net Cure Claim is comprised of the 2016 ad valorem real estate taxes estimated at $34,000 plus the Curator's reasonable attorney's fees incurred after July 31, 2018 and any late fees due under the Land Lease or Land Sublease as decided by the Bankruptcy Court or agreed upon by the Debtor and the Landlord. The Allowed Net Cure Claim is the Net Cure Claim as agreed to by the Debtor or Reorganized Debtor and the Conservator or as determined by Final Order of the Bankruptcy Court in the event of an unresolved dispute regarding the amount of the Net Cure Claim.

4.8.2    The Debtor and Reorganized Debtor propose to pay the Allowed Net Cure Claim on the later of ninety days from the Effective Date or the entry of a Final Order determining any dispute regarding the amount of the Net Cure Claim. The payment of the Allowed Net Cure Claim shall be from either the Exit Financing; Insider Loans; or from operating income or a combination of the foregoing.

4.8.3    Class 8 is Impaired.

4.9    **Class 9: Holders of Licenses for Park Use**

4.9.1    Class 9 consists those individuals who have purchased Park licenses (called memberships) which authorize the Holder to use the Park free of the usual entrance or admission charge. A list of the Holders of the licenses and the duration of each license are shown in the attached Exhibit A. The licenses were issued for either a three-year term or a life time term.

4.9.2    The Debtor and Reorganized Debtor will honor the licenses for the remainder of their respective terms and under their current terms and conditions and subject to the same obligations by the Holders. Nothing in the treatment of the licenses will extend the license term absent separate agreement between the license holder and the Debtor or Reorganized Debtor, as the case may be.

4.9.3    Class 9 is Unimpaired.

4.10    **Class 10: Allowed Non-Insider General Unsecured Claims.**

4.10.1  Class 10 consists of the Allowed Non-Insider General Unsecured Claims which are estimated at $400,089.91, the Holders of which are identified in the annexed Exhibit B.

4.10.2  The Debtor and Reorganized Debtor propose to pay all Allowed Non-Insider General Unsecured Claims in full within one hundred eighty days of the Effective Date or within a week of the closing of the Exit Financing, whichever later occurs.

4.10.3  Class 10 is Unimpaired.

4.11    **Class 11: Allowed Insider General Unsecured Claims (other than Class 7 and Class 12 Claims).**

4.11.1  Class 11 consists of the Holders of Allowed Insider General Unsecured Claims (other than the Class 7 Claim) which total $483,434.62. A list of the Holders in this Class 11 is annexed as Exhibit C.

4.11.2  The Holders of Allowed Class 11 Claims will continue to hold their respective notes representing the Claims notwithstanding the confirmation of this Plan (or any amendment to this Plan) and notwithstanding any discharge of indebtedness entered by the Bankruptcy Court. The Class 11 Claims shall not be due or payable by the Debtor or Reorganized Debtor for a period of not less than three years from the Effective Date. Furthermore, as to all Insider Debt Holders, the entry of a Confirmation Order or obtaining the Exit Financing shall not constitute an event that renders repayment of the Debtor's Insider debt "practicable" as set forth in the Operating Agreement.

4.11.3  Class 11 is Impaired.

4.12    **Class 12: Insider General Unsecured Claim of Bjorn Rosinus.**

4.12.1  Class 12 consists of the Insider General Unsecured Claim of Bjorn Rosinus, which is purported to be $340,506.36 as set forth in Claim 11 filed with the Bankruptcy Court ("BJ Claim). On November 28, 2018, the Bankruptcy Court heard the Debtor's objection to the BJ Claim and ruled that the objection should be sustained and the BJ Claim be disallowed in its entirety. An order is yet to be entered by the Bankruptcy Court on the objection. Based upon the Bankruptcy Court ruling disallowing the BJ Claim there is nothing is due the Class 12 Claimant from the Debtor and nothing shall be paid on account of Claim 11 through this Plan.

4.12.3  Class 12 is Unimpaired.

4.13        **Class 13: Equity Security Interests.**

4.13.1  Class 13 consists of the Holder of Allowed Equity Interests in the Debtor and Reorganized Debtor.

4.13.2  On the Effective Date, all Holders of Allowed Equity Interests as of the Petition Date, shall have their respective Allowed Equity Interests in the Debtor and Reorganized Debtor as they existed on the Petition Date vest in those Holders in the same amount and character as existed before the Petition Date. No payment shall be due from the Allowed Equity Interest Holders to the estate as shown in the annexed Exhibit D. However to the extent that equity is being sold or transferred as part of the Exit Financing funding this Plan, the transfers of equity to the entity supplying the Exit Financing shall be solely from the shares held by Terry Cooke or his affiliates. Such transfer shall leave all remaining Equity Security Holders other than Cooke with equity interests in the Reorganized Debtor Holders in the same amount and character as existed in the Debtor before the Petition Date.

4.13.3  Class 13 is Unimpaired.

4.14      **Satisfaction of Claims**

The treatment of, and consideration to be received by, Holders of Allowed Claims pursuant to this Article 4 and the Plan shall be in full satisfaction, release, extinguishment and discharge of their respective Claims against the Debtor, the Reorganized Debtor or the Debtor's Estate, except as otherwise provided in the Plan or the Confirmation Order.

## ARTICLE 5
## ACCEPTANCE OR REJECTION OF THE PLAN

5.1      **Each Impaired Class Entitled to Vote Separately.**

Except as otherwise provided in Article 5.4, the Holders of Claims or Equity Interests in each Impaired Class of Claims or Impaired Class of Equity Interests shall be entitled to vote separately to accept or reject the Plan.

5.2      **Acceptance by Impaired Classes.**

Holders of Claims in Impaired Classes are entitled to vote to accept or reject the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class

have voted to accept the Plan.

5.3     **Presumed Acceptance of Plan by Unimpaired Classes.**

Pursuant to Section 1126(f) of the Bankruptcy Code, any Unimpaired Class and the Holders of such Claims are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtor or the Reorganized Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

5.4     **Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.

**ARTICLE 6**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.1     **Rejection of Executory Contracts and Unexpired Leases**.

Except as set forth in Article 6.6, all executory contracts and unexpired leases that currently exist between the Debtor and another Person or Entity and that have not been expressly assumed (or assumed and assigned) or rejected by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date shall be deemed rejected by the Debtor as of the Confirmation Date (collectively, the "Rejected Contracts"); provided, however, the Debtor reserves the right, on or prior to the Confirmation Date, to assume (or assume and assign) any executory contract or unexpired lease by providing notice of such assumption to the party to the executory contracts and unexpired leases affected thereby. All executory contracts and unexpired leases that are expressly assumed (or assumed and assigned) by the Debtor either in this Plan or order of the Bankruptcy Court shall collectively be referred to as the "Assumed Contracts." Notwithstanding the foregoing, the Debtor and Reorganized Debtor reiterate their assumption of the Land Lease and Land Sublease pursuant to the previously filed Motion to Assume Sublease (which included assumption of both the Land Lease and the Land Sublease) which was filed with the Bankruptcy Court on March 30, 2018 [Doc. 53].

6.2     **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article 6.1 hereof, (ii) the approval, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 6.1 hereof,

and (iii) the extension of time, pursuant to § 365(d)(4) of the Bankruptcy Code, within which the Debtor may assume, assume and assign, or reject any unexpired lease of nonresidential real property through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired lease. The assumption by the Debtor of an Assumed Contract shall be binding upon any and all parties to such Assumed Contract as a matter of law, and each such Assumed Contract shall be fully enforceable by the Debtor in accordance with its terms, except as modified by the provisions of the Plan or an order of the Bankruptcy Court.

6.3      **Inclusiveness.**

Unless otherwise specified, each executory contract and unexpired lease that is rejected or assumed shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is specifically referenced in this Plan or in a notice of assumption provided under this Plan.

6.4      **Cure of Defaults.**

Any lessor, lessee, or other party to an Assumed Contract (except those lessors, lessees, or other parties whose unexpired leases or executory contracts have been previously assumed by a Final Order of the Bankruptcy Court) asserting a Cure Claim in connection with the assumption of any unexpired lease or executory contract under Article 6.1, as contemplated by § 365(b) of the Bankruptcy Code, must file such Cure Claim with the Bankruptcy Court on or before the Voting Deadline or other deadline ordered by the Court, asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any lessor or other party to an Assumed Contract failing to file a Cure Claim by such deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Debtor. The Debtor shall have ninety (90) days from the Effective Date to file an objection to any Cure Claim. Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties, by no later than one hundred eighty (180) days following the Effective Date, the Debtor shall cure any and all undisputed Cure Claims. All disputed Cure Claims shall be cured either within one hundred twenty (120) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto or as may otherwise be agreed to by the parties. Notwithstanding the foregoing, the cure claim of the Conservator shall be treated as set forth in Class 8, Section 4.8 of this Plan.

6.5      **Claims under Rejected Executory Contracts and Unexpired Leases**.

6.5.1    Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the applicable Debtor. With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be the Voting Deadline. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities

which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

      6.5.2   All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims. Any such Claims that become Disputed Claims shall be Disputed Claims for purposes of administration of Distributions under the Plan to Holders of Allowed Unsecured Claims.

6.6        **Insurance Policies**.

      The Debtor's insurance policies and any agreements, documents, or instruments relating thereto are treated as executory contracts under the Plan. All existing insurance policies are hereby expressly assumed by the Debtor or the Reorganized Debtor as appropriate in context. The Debtor or the Reorganized Debtor shall continue to pay the premiums on the insurance policies in the ordinary course of business from operating revenues or Debtor in Possession Financing prior to the funding of the Exit Financing in order to keep the insurance policies in full force and effect. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor may hold against any Person or Entity, including the insurers under any of the Debtor's insurance policies.

### ARTICLE 7
### MEANS OF IMPLEMENTING THE PLAN

7.1        **General Overview of the Plan**.

      The Plan provides for the continued operation of the Debtor as the Reorganized Debtor. There are four sources for Plan funding. First is the prosecution of the action entitled *FTTE, LLC, v. Cecil,* Case No. 2017-CA-1384 which is pending in the State Court. The claims asserted are breach of contract, legal malpractice and breach of fiduciary duty against Jeffrey Cecil and his law firm, Porter Wright Morris and Arthur, LLP. The case is not yet set for trial and is in the discovery phase. The claims are set forth in the Amended Complaint which is shown in Exhibit C to the Disclosure Statement accompanying this Plan.

      The second source of Plan funding is obtaining Exit Financing. The Exit Financing will be via new debt financing or an equity sale or a combination of new debt financing and equity. Debt financing to the Debtor or Reorganized Debtor shall be secured by a first lien interest in the Debtor's or Reorganized Debtor's property including the Land Lease and Land Sublease. Part of the Exit Financing funds would be used to construct or complete construction of long-planned amenities to the Park including campsite/RV site infrastructure and permanent theatrical pavilion both of which would substantially increase revenues during 'season' in conjunction with Park events. Depending upon the amount of Exit Financing that can be negotiated, other benefits including enhanced management and large event venue improvements, could result.

      A third source of funding is via new equity contributions from parties who have been off put by pending litigation and its impact to the Park operations. Certain of the Debtor's principals

believe that if the State Court litigation against the Debtor is concluded, that the Debtor could attract significant capital to fund the Plan and projects beyond the Plan.

A final source of funding would be via litigation against former partners with the Debtor for funds which were misdirected or misused to the detriment of the Debtor and its business operations.

The Debtor further intends to prosecute claims against Franz Rosinus for various claims including claims in the Franz Rosinus Chapter 7 bankruptcy case objecting to Mr. Rosinus general discharge and to the dischargeability of various claims that the Debtor holds against Mr. Rosinus or entities through which Mr. Rosinus acted to damage the Debtor and its financial standing which, in turn, caused financial and other harm to the Debtor. That action is entitled *FTTE, LLC. v. Rosinus,* Case No. 18-ap-180 and is pending in the Bankruptcy Court. In addition to that adversary proceeding, the Debtor continues to investigate possible claims against affiliates of Franz Rosinus which are within the contemplation of the Causes of Action which will revest in the Debtor or Reorganized Debtor at confirmation. Any recovery in any of those actions would be used either to fund operations, fund construction of Park improvements or to repay indebtedness consistent with this Plan.

The Debtor has removed two state court actions to the Bankruptcy Court. The first involves claims and defenses relating to the purported indebtedness of the Debtor to Finance. It is contemplated that the claims and defenses in that case would substantially track the claims objection addressing the issues set forth in Section 4.6 above. The second involves claims and defenses to the purported indebtedness of the Debtor to First CZ, LLC. It is contemplated that the claims and defenses in that case would substantially track the claims objection addressing the issues set forth in Section 4.7 above.

7.2        **Vesting of Property of the Estate in the Reorganized Debtor.**

On the Effective Date, except as otherwise expressly provided in this Plan, all Assets of the Estate (including the Causes of Action) shall vest in the Debtor or Reorganized Debtor, free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, encumbrances, and all other interests of every kind and nature, including claims of successor liability and the Confirmation Order shall so provide.  As of the Effective Date, the Debtor or Reorganized Debtor may operate and use, acquire, and dispose of its Assets, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  All privileges with respect to the Assets of the Debtors' Estates, including the attorney-client privilege, to which the Debtor is entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Debtor or Reorganized Debtor.

7.3        **New Equity Contribution**

7.3.1    Other than the transfer of membership interests to satisfy the collateral requirements of the Exit Financing, no additional contribution from existing Equity Security

Holders is required under, or contemplated by, this Plan. Any new equity would come from third parties.

7.4        **Continued Corporate Existence.**

Unless otherwise provided, the Debtor will continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a Florida limited liability company under Florida Law and pursuant to its organizational documents and Operating Agreement in effect prior to the Effective Date, except to the extent such organizational documents are amended or amended and restated consistent with the Plan or the Confirmation Order, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

7.5        **Corporate Action.**

All matters provided for under the Plan involving the corporate structure of the Debtor, or any corporate action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the director(s), managers, officers or members of the Debtor.

7.6        **Management of the Reorganized Debtor.**

7.6.1    Subject to any requirement of Bankruptcy Court approval pursuant to § 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, every executive officer, manager or director of the Debtor immediately before the Effective Date shall be deemed to continue to be an officer, manager or director of the Debtor or the Reorganized Debtor without the need for any further action. The person who will manage the Debtor and Reorganized Debtor is Taurus Adventure Management, LLC through its manager, Terry Cooke. Also, pursuant to the terms and provisions of the Operating Agreement, various actions must be reviewed and approved by an advisory board made up of certain equity members of the Debtor. That board shall be deemed to continue post confirmation of this Plan consistent with its pre-petition rights, duties and obligations under the Debtor's Operating Agreement.

7.6.2    On and after the Effective Date, the Debtor's operations shall continue to be the responsibility of its officers, managers and directors.  The Debtor has complied with the disclosure requirements of 11 U.S.C. § 1129(a)(5).

7.6.3    From and after the Confirmation Date, the executive officers, managers and directors of the Debtor shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

7.7        **Issuance of Equity Interests in the Reorganized Debtor.**

7.7.1    To the extent necessary to fulfill the requirements of this Plan, the Reorganized Debtor, within sixty days of the Effective Date, or upon the closing of the Exit Financing,

whichever later occurs, shall distribute, in accordance with the provisions of the Plan, the Equity Interests in the Reorganized Debtor in accordance with the Plan.

7.8        **Section 1146 Exemption.**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any Security, or the making, delivery or recording of any instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any Property of, by or in the Debtor or its Estate or the Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

7.9        **Pursuit and Settlement of Causes of Action.**

7.9.1    On the Effective Date, the Causes of Action shall be vested in the Reorganized Debtor, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court.  The Reorganized Debtor will have the right, in its sole and absolute discretion, to pursue, not pursue, settle, release or enforce any Causes of Action without seeking any approval from the Bankruptcy Court except as otherwise provided in this Plan. The Debtor is currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action.  For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.  The Reorganized Debtor will fund the costs and expenses (including legal fees) to pursue the Causes of Action.

7.9.2    No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action.  No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, EXCEPT AS SET FORTH IN THE PLAN, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF REORGANIZED DEBTOR.  Creditors are advised that legal rights, claims, and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless the Plan provides otherwise.  As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan

as any indication that the Debtor or Reorganized Debtor does not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan.  It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Reorganized Debtor.  A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Reorganized Debtor, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action.  Nothing in the Plan operates as a release of any of the Causes of Action, except as expressly provided otherwise.

7.9.3    The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that Reorganized Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action.  Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court.  Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any *res judicata* or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

7.9.4    The Debtor and the Reorganized Debtor reserve all rights under Section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims.

7.9.5    The Estate shall remain open, even if the Bankruptcy Case shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered, monetized, concluded, dismissed, settled or adjudicated and the Causes of Action Recoveries have been received by the Reorganized Debtor.

7.10        **Effectuating Documents; Further Transactions.**

Each manager, officer or director of the Debtor or Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

7.11        **Exclusivity Period**.

The Debtors will retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

## ARTICLE 8
## PROVISIONS GOVERNING CLAIMS RESOLUTION
## AND DISTRIBUTIONS

8.1    **Plan Distributions**

The Debtor or Reorganized Debtors shall make distributions in accordance with this Plan and the Confirmation Order. The Debtor or Reorganized Debtor shall make the distributions required by the Plan in Cash.

8.2    **Timing of Distributions**

Except as specifically set forth in this Plan, Distributions will be made to Holders of Allowed Claims in accordance with Article 4 of this Plan. If a Claim is not an Allowed Claim as of the applicable distribution date, distributions will be made only if and when the Claim is Allowed, and then in accordance with Article 4 of the Plan, and, with respect to the cure of defaults for assumed executory contracts or unexpired leases, Article 6 of the Plan, and in each case subject to Article 8 of the Plan. Distributions to be made after the Effective Date on account of Claims that are allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made after the Effective Date or as soon as reasonably practicable thereafter as set forth in this Plan. Distributions to be made after the Effective Date shall be made on the dates set forth in the Plan by the Reorganized Debtor.

8.3    **Determination of Claims**

8.3.1    From and after the Effective Date, the Reorganized Debtor shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims.  Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than ninety (90) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtor or Reorganized Debtor), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve the Notice Parties with any request to the Bankruptcy Court for allowance to file late Unsecured Claims.  If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as an Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date sixty (60) days after Reorganized Debtor receives actual notice of the filing of such Claim.

8.3.2    Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor or Reorganized Debtor, as the case may be, effect service in any of the following manners:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment

thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

8.3.3    Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. §157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Reorganization Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution. The Debtor or Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. Upon receipt of a timely-filed Proof of Claim, the Debtor, the Reorganized Debtor or any other party in interest, may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in estimation hearings shall be final and binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

8.4    **Allowed Unsecured Claim Distributions**

8.4.1    Each Holder of an Allowed Unsecured Claim shall receive a Cash Distribution, on the applicable distribution date, in the amount provided for in Article 4 of the Plan.

8.4.2    Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Unsecured Claim unless and until such Disputed Claim becomes an Allowed Claim.  At such time that such Disputed Claim becomes an Allowed Class 10 Claim, the Holder of such Allowed Unsecured Claim shall receive the Distribution to which such Holder is then entitled under the Plan.

8.4.3    Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of an Unsecured Claim is subject to a proceeding against it by Reorganized Debtor under Section 502(d) of the Bankruptcy Code, then the Reorganized Debtor (in its sole discretion) may withhold a Distribution to such Holder until the final resolution of such proceeding.

8.4.4    Distributions to a Holder of an Allowed Unsecured Claim shall be made at the

address of such Holder set forth in the Schedules or on the books and records of the Debtor or Reorganized Debtor at the time of the Distribution, unless Reorganized Debtor has been notified in writing of a change of address, including by the filing of a Proof of Claim or statement pursuant to Bankruptcy Rule 3003 by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules.  Reorganized Debtor shall not be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided herein.

8.5    **Miscellaneous Distributions Provisions**

Except as set forth herein, any Distribution of Cash to be made by the Reorganized Debtor pursuant to this Plan may be made by draft, check, wire transfer or as otherwise required by applicable law. Any payment or Distribution due on a day other than a Business Day shall be made, without interest accruing, on the next Business Day. Except as expressly set forth herein, pursuant to Section 502 of the Bankruptcy Code, no Holder of an Allowed Claim shall receive in respect of such Claim any Distributions in excess of the allowed amount of such Claim.

8.6    **Unclaimed Distributions**

8.6.1    If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within sixty (60) days of the date such check was issued, then Reorganized Debtor shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim. In addition, to the extent that such Claim is no longer deemed Allowed and the Claim is secured by a lien against the Reorganized Debtor's property, then the Bankruptcy Court may consider a motion to strip the lien from such property upon motion by the Reorganized Debtor with notice to the Holder of the Claim disallowed under this provision and after a post confirmation hearing.

8.6.2    If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to Reorganized Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to Reorganized Debtor as to such check within sixty (60) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

8.6.3    Any unclaimed Distribution as described above sent by the Reorganized Debtor shall become the property of Reorganized Debtor.

8.6.4    Each Holder of a Claim shall be responsible for furnishing to the Clerk of the Bankruptcy Court and counsel for the Debtor or Reorganized Debtor any change from the address

reflected on the Debtor's Schedules or such Holder's Proof of Claim.

8.7    **Transfer of Claim**

In the event that the Holder of any Claim shall transfer such Claim on or after the Effective Date, it shall immediately advise the Debtor and the Reorganized Debtor in writing of such transfer. The Debtor or Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Debtor or Reorganized Debtor shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Debtor and Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

8.8    **One Distribution Per Holder.**

If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distribution hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

8.9    **Effect of Pre-Confirmation Distributions.**

Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtor or Reorganized Debtor to such Holder under the Plan.

8.10    **No Interest on Claims.**

Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition Interest or the payment of Postpetition Interest, penalties, or late charges on account of such Allowed Claim for any purpose.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Disputed Claim becomes an Allowed Claim.

8.11    **Reserved Claims**

The Debtor or Reorganized Debtor shall not be required to establish any reserves, including but not limited to Reserves for Disputed Claims.

8.12    **Setoffs and Recoupment**

The Reorganized Debtor may, but shall not be required to, set off or recoup against any Allowed Claim and the distribution to be made pursuant to the Plan on account of such Claim, claims of any nature that the Debtor or Reorganized Debtor may have against the Holder of such Allowed Claim. However neither the failure to effect such set off or recoupment nor the allowance of any Claim against the Debtor or Reorganized Debtor shall constitute a waiver, release or estoppel by the Debtor or Reorganized Debtor of any claim that the Debtor or Reorganized Debtor may hold against the Holder.

8.13    **Compliance with Tax Requirements**

In connection with each Distribution with respect to which the filing of an information return (such as Internal Revenue Forms 1099 or 1042) or withholding is required, the Debtor or the Reorganized Debtor, as appropriate, shall file such information return with the IRS and provide the required statements in connection therewith to the recipients of such distribution or effect such withholding and deposit all such moneys as required by law. With respect to any Person from whom a tax identification number, certified tax identification number or any other tax information is required by law to avoid withholding which has not been received by the Debtor or Reorganized Debtor within thirty days of a request for such information, then the Debtor or Reorganized Debtor may withhold such Distribution until the tax information received. If the Person entitled to such Distribution fails to provide the tax information requested by the Debtor or Reorganized Debtor within sixty days of such request, the Distribution shall be treated as Unclaimed Distribution as set forth in Section 8.6 of this Plan. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution

8.14    **Professional Fee Claims**

Professionals asserting a claim for Accrued Professional Compensation for services rendered before the Effective Date must File and serve on the Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or any interim compensation order an application for final allowance of such Claim for Accrued Professional Compensation no later than forty five days following the Effective Date. Objections to any Claim for Accrued Professional Compensation must be Filed and served upon the Reorganized Debtor, the U.S. Trustee and the requesting party no later than thirty days after the filing of the application. A Claim for Accrued Professional Compensation in respect to a timely filed application shall be payable to the extent approved by order of the Bankruptcy Court.

# ARTICLE 9
## DISCHARGE, EXCULPATION OF LIABLITY, RELEASE,
## LIABILITY AND GENERAL INJUNCTION

9.1    **Discharge of Claims**

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to §1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and the Reorganized Debtor from any and all Debts, Liens or Claims of any nature whatsoever against and interests in the Debtor that arose at any time prior to the Confirmation Date, including any and all Claims for principal, interest, fees, penalties and similar claims and charges, whether accrued before, on or after the Filing Date. Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor, the Reorganized Debtor and their respective successors or assigns, shall be discharged to the fullest extent permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in §§502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to §501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to §502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Confirmation Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim, Lien or Equity Interest, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor or the Reorganized Debtor or their Estate or any of their respective successors or assigns, or the assets or Properties of any of them, any other or further Claims, Debts, Liens rights, causes of action, remedies or Liabilities based upon any act, omission, document, instrument, transaction or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan and the Confirmation Order shall contain appropriate injunctive language to that effect. As of the Effective Date, Holders of Equity Interests shall have no rights arising from or relating to such Equity Interests, except as otherwise expressly provided in this Plan. In accordance with the foregoing, except as specifically provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge of all such Claims, Liens and other Debts and Liabilities against the Debtor or reorganized Debtor pursuant to §§524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim, Debt or Liability. Notwithstanding the foregoing, if under the Plan the Reorganized Debtor is obligated to make payments to Holders of Allowed Claims or to take such other action necessary to effectuate the terms of this Plan, the Reorganized Debtor shall remain obligated to make such payments or to take such action.

**Exculpation from Liability**

The Debtor and the Reorganized Debtor, their agents, directors, managers, officers and any Professionals for the Debtor (acting in such capacity)(collectively "Exculpated Parties") shall

neither have nor incur any Liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Reorganization Case. Provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any of the Exculpated Parties. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case.  Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy.  The rights granted under this Article 9.2 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law.  In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under § 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan.  This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

## 9.2     **General Injunction**

Pursuant to §§105, 1123 and 1129 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold  or may hold a Claim, Debt, Liability or Equity Interest that is discharged pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted  by applicable law from taking any of the following actions on account of any such discharged Claims, Debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the Reorganized Debtor, or their respective Properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor or their respective Properties; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor, the Reorganized Debtor, or their respective Properties; (d) asserting a setoff, right of subrogation or recoupment of any kind against any Debt, Liability or obligation due the Debtor, the Reorganized Debtor or their respective Properties; (e) commencing or continuing,  in any manner or in any place outside of the Bankruptcy Court, any action, suit, proceeding, claim or cause of action against any officer or director of the Debtor or Reorganized Debtor or any Professional for acts done in the course of such person's duties and official capacity during the course of the Reorganization Case, in contemplation thereof or otherwise, including but not limited to the consolidation, preservation and liquidation of the Estate and such tasks necessarily incident thereto; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or the Reorganized Debtor under the Plan and the Plan Documents and the other documents executed in connection therewith. The parties release hereunder shall have the right to independently seek enforcement of this general injunction provision. This general

injunction provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provision of this Article 9.3 shall not release, nor deemed to be a release of any of the Causes of Action.

9.3        **Release of Liens.**

On the Effective Date, except for liens expressly provided to be retained pursuant to the Plan, all mortgages, deeds of trust, liens or other security interests against the Property of the Debtor will be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trusts, liens or other security interests, including rights to collateral thereunder, will revert to the Reorganized Debtor. Unless expressly provided for in this Plan, each Holder of any Allowed Secured Claim shall surrender to the Reorganized Debtor any note, instrument or certified security evidencing such Claim. No Distribution shall be made or due under this Plan unless and until the Holder of a Claim executes and delivers to the Reorganized Debtor such release of liens or other items described above or demonstrates the non-availability of such items to the satisfaction of the Reorganized Debtor, including the posting of a lost instrument indemnity bond. The Reorganized Debtor may require a hold harmless from the Holder of the Allowed Secured Claim up to the amount of the Distribution on such Claim with regard to any unavailable note, instrument, security agreement, mortgage, deed of trust or other similar document. The failure of the Holder of an Allowed Secured Claim to provide the release required by this section or to provide satisfactory proof of the non-availability of such document within one hundred eighty days of the Effective Date shall be deemed to have no further Claim against the Debtor or Reorganized Debtor and the Distribution that would have been made to such Holder shall be deemed Unclaimed Property under this Plan. Provided however, that the Holder of a Disputed Claim need not release its lien unless and until the time such Claim is Allowed or Disallowed.

9.4        **Term of Certain Injunctions and Automatic Stay**

9.4.1     All injunctions or automatic stays for the benefit of the Debtor pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise provided for in the Bankruptcy Case, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court as set forth in this Plan.

9.4.2     With respect to all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish the Debtor' liability on Prepetition Claims asserted therein and that are stayed pursuant to Section 362 of the Bankruptcy Code, except as otherwise provided in this Plan, such lawsuits shall be deemed dismissed as of the Effective Date, unless the Debtor affirmatively elects to have the Debtor's liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Debtor affirmatively elects to have the automatic stay lifted and to have the Debtor's liability established by such other courts; and the Prepetition Claims at issue in such lawsuits shall be determined and either Allowed or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless

otherwise elected by the Debtor as provided herein.

9.5            **Revesting and Vesting**

Except as otherwise provided in the Plan, on the Effective Date, all property comprising the estate of the Debtor shall vest in the Reorganized Debtor, free and clear of all claims, liens, charges, encumbrances and interests of creditors (except to the extent that such claims, liens, charges, encumbrances or other interests have been reinstated or have been provided for in the Plan).

9.6            **No Liability for Tax Claims**

Unless a taxing Governmental Authority has asserted a Claim against the Debtor before the Bar Date established therefor, no Claim of such Governmental Authority shall be Allowed against the Debtor or the Reorganized Debtor for taxes, penalties, interest, additions to tax or other charges arising out of the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Filing Date. The Debtor shall be responsible for the filing of all unfiled tax returns of the Debtor relating to any period prior to the Effective Date.

9.7            **Release and Compromise**

Consistent with 11 U.S.C. §1123(b)(3), on the Effective Date the Reorganized Debtor, the Estate, and the officers, directors, managers, members, shareholders, employees, Professionals, attorneys, accountants, financial advisers, representatives and agents of, the Reorganized Debtor and the Estate are deemed to have mutually and unconditionally settled, compromised, and released the Debtor from any and all Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, Debts, indebtedness or Liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission, transaction, event or occurrence taking place on or prior to the Effective Date in any way relating or pertaining to the Reorganization Case, any other assets or Property of the Debtor, the business and operations of the Debtor, the Plan, or any of the transactions contemplated thereby, and the Estates shall not retain or pursue any actual or potential cause of action against any of the foregoing except as otherwise provided in the Plan. The entry of the Confirmation Order will constitute and effectuate the permanent injunction referenced in this provision. This injunction enjoins the commencement or prosecution of any such actions, whether directly, derivatively or otherwise. This release and compromise does not impact obligations specifically set forth in this Plan.

**ARTICLE 10**
**CONDITIONS PRECEDENT**

10.1           **Conditions Precedent to Confirmation**

10.1.1  The Bankruptcy Court shall not enter the Confirmation Order, the Confirmation of the Plan shall not be effective, and the Debtor shall not become obligated to consummate the Plan, unless the following conditions have been satisfied (or to the extent permitted, duly waived by the appropriate party) by no later than the date of the Confirmation Hearing:

10.1.1  The Bankruptcy Court shall have made such findings and determinations encompassed in a Final Order (which may be in the Confirmation Order) approving the Disclosure Statement as containing adequate information within the meaning of Section 1125 of the Bankruptcy Code;

10.1.2  The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in the manner consistent with the provisions of the Plan and in form and substance satisfactory to the Debtor and Reorganized Debtor.

The Debtor may waive one or more of the conditions precedent to confirmation of the Plan without leave, notice or order of the Bankruptcy Court.

10.2      **Conditions Precedent to Effective Date**

10.2.1  The Plan shall not be consummated and the Effective Date shall not occur unless the following conditions have been satisfied (or to the extent permitted, duly waived by the appropriate party) within ten (10) days following the Confirmation Date, unless further extended by the Debtor.

10.2.2  The Confirmation Order in form and substance is satisfactory to the Debtor and the Reorganized Debtor has been entered and such Confirmation Order shall not have been stayed pending any appeal.

10.2.3  Any amendments or modifications to the Plan made after the entry of the Confirmation Order shall be reasonably satisfactory in form and substance to the Debtor.

The Debtor may waive one or more of the conditions precedent to the Effective Date without leave, notice or order of the Bankruptcy Court.

10.3      **Effective Date Notice**

Promptly following the satisfaction, or the waiver by the Debtor, of all of the conditions set forth in Article 10.2, the Debtor shall file a notice (the "**Effective Date Notice**") with the Bankruptcy Court designating the Effective Date.  The Debtor shall serve the Effective Date Notice on all of the Notice Parties.

## ARTICLE 11
## RETENTION OF JURISDICTION

11.1   **General Retention**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date and pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

11.2   **Specific Purposes**

In addition to the general retention of jurisdiction set forth in Article 11.1, after confirmation of the Plan and until the Reorganization Case is closed, the Bankruptcy Court shall retain jurisdiction over the Reorganization Case for the following specific reasons:

11.2.1  To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application for an Administrative Expense Claim and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

11.2.2  To determine any and all cases, controversies, suits or disputes arising under or relating to the Plan (including, without limitation, regarding the effect of any release, or Confirmation Order, discharge, injunction, or indemnification provisions, provided for herein or affected hereby and regarding whether conditions to the consummation of the Plan have been satisfied);

11.2.3  To determine any and all applications for allowance of compensation and reimbursement of expenses under §§330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to this Reorganization Case or any Claim or Equity Interest; provided, however, that this retention of jurisdiction shall not be considered to require prior Bankruptcy Court approval of the payment of professional services following entry of the Confirmation Order;

11.2.4  To determine any and all motions for rejection, assumption or assignment of executory contracts and unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable and to determine the allowance of any Claims resulting from the rejection thereof or form the rejection of executory contracts or unexpired leases, and to determine the amount necessary to cure defaults in any assumed executory contract or unexpired lease;

11.2.5  To resolve any issues, cases, controversies, disputes or Causes of Action arising out of or in connection with or which relate to the Plan, Disclosure Statement, Confirmation Order or any contact, agreement, term, provision or instrument referenced in any of those documents;

11.2.6  To determine any and all motions, applications, adversary proceedings, and contested matters or litigated matters involving the Debtor or Reorganized Debtor

commenced in connection with, arising during or related to the Reorganization Case;

11.2.7  To enforce, interpret and administer the provisions of the Plan and the exhibits thereto;

11.2.8  To adjudicate, decide or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

11.2.9  To adjudicate, decide or resolve any and all matters related to state, local or federal taxes in accordance with Sections 346, 505, 1146 of the Bankruptcy Code;

11.2.10      To modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

11.2.11      To correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the exhibits to the Plan and annexed thereto, or the Confirmation Order, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

11.2.12      To resolve any disputes concerning any release or exculpation of, or limitation of liability as to, a non-debtor (including any Professional) hereunder or the injunction against acts, employment of process or actions against such non-debtor (including any Professional) arising hereunder;

11.2.13      To determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

11.2.14      To enforce all orders, judgments, injunctions, and rulings entered in connection with this Reorganization Case;

11.2.15      To enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan; and

11.2.16      To enter an order concluding and terminating this Bankruptcy Case;

11.2.17      To enforce all orders previously entered by the Bankruptcy Court;

11.2.18      To hear any other matter not inconsistent with the Bankruptcy Code.

11.3    **Reopening of the Bankruptcy Case.**

In addition to the retention of jurisdiction set forth in Articles 11.1 and 11.2, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case to enter an order reopening the Bankruptcy Case after it has been closed

**ARTICLE 12**
**MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS**

12.1    **Modification of Plan**

12.1.1  The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement as sufficient to meet applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

12.1.2  After the entry of the Confirmation Order, the Debtor (prior to the Effective Date) or the Reorganized Debtor (on and after the Effective Date) may modify the Plan to remedy any defect or omission herein, or to reconcile any inconsistencies between the Plan and the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtor or the Reorganized Debtor (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims or Equity Interests under the Plan

12.1.3  After the entry of the Confirmation Order and before substantial consummation of the Plan, the Debtor (prior to the Effective Date) or the Reorganized Debtor (on and after the Effective Date) may modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements, (b) the Debtor or the Reorganized Debtor (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Notice Parties and the Class of Claims or Equity Interests materially adversely affected and a hearing, (c) such modification is accepted by (i) at least two-thirds in dollar amount, and more than one-half in number, of the Allowed Claims actually voting in each Class of Claims adversely affected by such modification or (ii) at least two-thirds in amount of Allowed Equity Interests actually voting in each Class of Equity Interests adversely affected by such modification, and (d) the Debtor or the Reorganized Debtor (as the case may be) comply with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

12.1.4  Notwithstanding anything to the contrary contained in this Article 12.1 or elsewhere in the Plan, the Plan may not be altered, amended or modified without the written consent of the Debtor (prior to the Effective Date) or the Reorganized Debtor (on and after the Effective Date).

12.2    **Confirmation Over Objections.**

In the event any Impaired Class of Claims or Equity Interests votes against the Plan, and

the Plan is not revoked or withdrawn, the Debtor hereby requests, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code.  The Debtor may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing.  No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court shall require otherwise.  Notwithstanding any provision of the Plan to the contrary, the Debtor reserves any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

**ARTICLE 13**
**MISCELLANEOUS**

13.1      **No Admissions**

The Plan provides for the resolution, settlement and compromise of Clams against and Equity Interest in the Debtor. Nothing in this Plan shall be construed to be an admission of any fact or otherwise be binding upon the Debtor or any other party prior to the Effective Date.

13.2      **Revocation of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (i) constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtor or any other Person or Entity, or (ii) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

13.3      **Standard for Approval of the Bankruptcy Court**

In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

13.4      **Further Assurances**

The Debtor and Reorganized Debtor agree, and are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the Plan.

13.5      **Headings**

The headings used in the Plan are for convenience and reference only and shall not constitute part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

13.6      **Notices**

13.6.1  All notices required by the Plan shall be in writing, addressed using the addresses indicated on the current mailing matrix obtained from the Bankruptcy Court.

13.6.2  Notices to counsel of record who have appeared in this case and who have signed up for electronic notification via the Bankruptcy Court CM/ECF system shall be deemed to have received notice upon the electronic filing of the notice with the Bankruptcy Court.

13.6.3  All notices, requests or other documents in connection with, or required to be served by, the Plan shall be in writing and shall be sent by Bankruptcy Court CM/ECF electronic notice or by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, as to the Debtor, c/o Richard Johnston, Jr., Johnston Law PLLC, 7370 College Parkway, Suite 207, Fort Myers, Florida 33907 or to richard@richardjohnstonlaw.com.

13.6.4  In the event that notice is given by facsimile transmission, a duplicate copy of the notice shall be mailed as soon as possible after the transmission unless the recipient has received the notice electronically through the Bankruptcy Court.

13.6.5  Any entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and by serving a copy upon the Debtor's counsel.

13.7      **Governing Law**

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provide otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

13.8      **Limitations on Allowance**

No attorney's fees, costs, punitive damages, penalties, special damages, exemplary damages or interest shall be allowed with respect to any Claim or Equity Interest except as otherwise expressly provided in this Plan or as Allowed by a Final Order of the Bankruptcy Court.

13.9        **Estimated Claims**

To the extent any Claim is estimated for any purpose other than voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

13.10        **Consent to Jurisdiction.**

Upon any default under the Plan, the Debtor or the Reorganized Debtor consent to the jurisdiction of the Bankruptcy Court and agree that the Bankruptcy Court shall be the preferred forum for all proceedings relating to any such default.

By accepting any Distribution under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim or Cure Claim, by voting on the Plan, by reason of being served with notice of the filing of the Reorganization Case or the Confirmation Hearing, or by entering an appearance in the Reorganization Case, Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Debtor, the Reorganized Debtor, the Plan or the Reorganization Case, including the matters and purposes set forth in Article 11 of the Plan.  The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 11 of the Plan.

13.11        **Setoffs**

Subject to the limitations provided in §553 of the Bankruptcy Code, the Debtor or Reorganized Debtor may, but shall not be required to, setoff against any Claim and any Distribution to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor or the Reorganized Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Reorganized Debtor of any such claim that the Debtor may have against such Holder.  Except as authorized by the Bankruptcy Court prior to the entry of the Confirmation Order, all claims of setoffs which could be asserted by the Creditors are deemed waived.

13.12        **Successors and Assigns**

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

13.13        **No Interest**

Except as expressly stated in the Plan or otherwise allowed by Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the Allowance or accrual

of Post-Petition interest or the payment of Post-Petition interest, penalties or late charges on account of such Claim for any purpose.

13.14      **Modification of Payment Terms**

The Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in §1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the holder of such Allowed Claim.

13.15      **Entire Agreement**

The Plan and Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents. No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by such Person or Entity in writing.

13.16      **Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter or interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.17      **Confirmation Order and Plan Control**

To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor or the Reorganized Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation Order and the Plan shall control over the Disclosure Statement and any such agreement.  The Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

13.18      **Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

13.19        **Inapplicability of Securities Laws**

Any satisfaction, document or interest which is provided to any Creditor pursuant to this Plan which may be deemed a security is exempt from registration under any applicable State or Federal securities laws. However, absent registration or another exemption, subsequent transfer of any such security is not exempt.

13.20        **Service of Documents**

After the Effective Date, any pleading, notice or other documents required by the Plan to be served on or delivered to the Debtor or Reorganized Debtor shall be served on: Richard Johnston, Jr., Johnston Law, PLLC, 7370 College Parkway, Suite 207, Fort Myers, FL 33907 by first class mail, postage prepaid or by Bankruptcy Court CM/ECF electronic mail with copy to:  richard@richardjohnstonlaw.com.

After the Effective Date, the Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have interests in the performance of the Plan terms.

13.21        **Payment of Statutory Fees**

All fees payable pursuant to Section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court, shall be paid for each quarter (including any fraction thereof) until the first to occur: the Bankruptcy Case being converted, dismissed or closed.

FTTE, LLC


Dated: March 8, 2019              */s/ Terry J. Cooke* *
                                  Terry J. Cooke
                                  Manager of Taurus Adventure Mgt., LLC
                                  As manager of Debtor


*Wet signature maintained at office of Johnston Law, PLLC


March 8, 2019

                                  */s/ Richard Johnston, Jr.*
                                  Richard Johnston, Jr.
                                  Florida Bar No. 0340995
                                  Johnston Law, PLLC
                                  7370 College Parkway, Suite 207
                                  Fort Myers, FL 33907
                                  Telephone: 239-600-6200
                                  Facsimile: 877-727-4513

richard@richardjohnstonlaw.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via

CM/ECF electronic mail and via Certificateofservice.com to the creditors on the mailing matrix

on this **8<u>th</u>** day of March, 2019, to:

United States Trustee
Benjamin Lambers
All attorneys of record

**And via U.S. Mail to:**
FTTE, LLC
39450 Bermont Road
Punta Gorda, FL 33982

Mailing Matrix

*/s/ Richard Johnston, Jr.*
Richard Johnston, Jr.